UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

WILL MULLINS,

                            Petitioner,                    **MEMORANDUM & ORDER**
                                                                                   17-CV-2958 (MKB)

                  v.

HAROLD D. GRAHAM,

                            Respondent.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Will Mullins, proceeding *pro se* and currently incarcerated at Auburn Correctional Facility, brings the above-captioned habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his federal constitutional rights. (Pet., Docket Entry No. 1.) Petitioner's claims arise from a judgment of conviction after a jury trial in Supreme Court of the State of New York, Kings County, for assault in the first degree and criminal possession of a weapon in the second degree, in connection with the July 6, 2011 shooting of a victim. (*Id.* at 2.) Currently before the Court is Petitioner's application to hold his petition in abeyance until his motion to vacate his conviction pursuant to New York Criminal Procedure Law section 440.10 ("440 Mot.") in state court is resolved, and to allow amendment of the petition. (Pet. Mot. to Stay ("Pet. Mot."), Docket Entry No. 9.) For the reasons set forth below, the Court denies Petitioner's motion in its entirety.

**I. Background**

    **a. Underlying criminal proceedings**

On July 6, 2011, Petitioner walked up to Agustin Pinilla and attempted to punch Pinilla

in the face, but Pinilla blocked the punch. (Trial Tr. A 83–84, 100, 183–84; Trial Tr. B 268–70.)[1] Pinilla "smacked" Petitioner in the face, knocking Petitioner's eyeglasses to the ground. (Trial Tr. A 84, 184; Trial Tr. B 268, 270.) Petitioner retrieved his glasses, and ran toward the entrance of his apartment building where his sister was standing. (Trial Tr. A 84–85, 100–03.) Petitioner's sister handed him a gun, (Trial Tr. A 85–86, 103, 108), and Petitioner handed the gun to his friend and told that friend to shoot Pinilla, (Trial Tr. A 85–86, 88, 90, 108). Petitioner's friend aimed the gun at Pinilla and shot him twice. (Trial Tr. A 89–91, 108; Trial Tr. B 271, 287.) Petitioner, his sister, and his friend were charged jointly with attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree and related counts.[2] (Resp't's Opp'n 2, Docket Entry No. 7.)

### i. Grand jury proceedings

On September 22, 2011, Pinilla testified before the grand jury that: (1) Petitioner told his friend to shoot him and Petitioner's friend shot him in the stomach, (Grand Jury Tr. 12, annexed to 440 Mot. as Pet'r's Ex. A, Docket Entry No. 7-7); (2) when Petitioner's friend shot him, the friend was eight feet away and there was nothing blocking his view of Petitioner's friend, (*id.*); and (3) after the friend shot him in the stomach, he turned and the friend shot him a second time, hitting him on the right side of his hip, (*id.* at 13).

### ii. Trial

Pinilla testified at trial that he knew Petitioner and his sister because they all lived in the

---

[1] The trial transcript was filed in four parts and is annexed to Respondent's opposition as Exhibit D. Trial Transcript A covers pages 1 through 253 and appears on the docket as Docket Entry No. 7-3; Trial Transcript B covers pages 254 through 523 and appears on the docket as Docket Entry No. 7-4; Trial Transcript C cover pages 524 through 811 and appears on the docket as Docket Entry No. 7-5; and Trial Transcript D covers pages 812 through 993 and appears on the docket as Docket Entry No. 7-6.

[2] Petitioner's sister and friend were acquitted of all charges. (Resp't's Opp'n 2.)

same apartment building. (Trial Tr. A 72–76, 87, 170, 179, 186, 190; Trial Tr. B 288–89.) He was also familiar with Petitioner's friend, the shooter, from seeing him in the neighborhood with Petitioner. (Trial Tr. A 86, 170, 190.) Pinilla had a clear unobstructed day-lit view of Petitioner and his sister before the confrontation. (Trial Tr. A 82–83.) He saw Petitioner's sister hand Petitioner a gun. (Trial Tr. A 85–86, 103, 108.) He also saw Petitioner hand the gun to his friend and heard Petitioner tell the friend to shoot him. (Trial Tr. A 85–86, 88, 90, 108.) Petitioner's friend aimed the gun at Pinilla and shot Pinilla twice. (Trial Tr. A 89–91, 108; Trial Tr. B 271, 287.) He first shot Pinilla in the "hips," at which point Pinilla turned around to flee and the shooter shot him a second time in the back. (Trial Tr. A 89–90.) Because of the shootings, Pinilla had three surgeries and wore a colostomy bag for "almost a whole year." (Trial Tr. A 114.)

Dr. Toluwumi Jegede treated Pinilla at the hospital immediately after the incident. At trial Dr. Jegede testified that Pinilla sustained two gunshot wounds, (Trial Tr. B 431), resulting in "three holes" (Trial Tr. B 460). One bullet hole was in Pinilla's left buttock, another was in his "left lumbar region" and the third was in his "right anterior thigh." (Trial Tr. B 462.) Two of the bullet holes resulted from one gunshot, the bullet entering the left buttock and exiting the right thigh. (Trial Tr. B 462–64.) Pinilla sustained "abdominal injuries" and "was deemed to be bleeding in the abdomen." (Trial Tr. B 431–32.) Pinilla underwent three surgeries: one was a "small bowel resection," (Trial Tr. B 437), another was a bulletectomy, which removed the bullet from his hip joint (Trial Tr. B 439–40), and the third was a surgery to close Pinilla's fascia, the layer of connective tissue below the skin, (Trial Tr. B 440). At some point after he was discharged from the hospital, Pinilla underwent a reversal of the colostomy, which is an invasive procedure. (Trial Tr. 442–43.)

3

On April 22, 2013, Petitioner was convicted by a jury of assault in the first degree and criminal possession of a weapon in the second degree. (Pet. 2; Trial Tr. D 980–93.) On May 2, 2013, Petitioner was sentenced as a second violent felony offender to concurrent prison terms of fifteen years for assault and ten years for weapon possession, to be followed by five years of post-release supervision. (*Id.* at 1.)

### b. Petitioner's direct appeal

Petitioner appealed his conviction to the New York Appellate Division, Second Department, claiming that: (1) the trial court's *Sandoval* ruling[3] violated his rights to due process and to present a defense; (2) the verdict was "repugnant;" (3) the conviction was not supported by legally sufficient evidence and was against the weight of the evidence; (4) the trial court erred by failing to conduct a meaningful inquiry into a threat made by one juror to another juror during deliberations; (5) the trial court erred by denying petitioner's mistrial motion based on the prosecution's late disclosure of a 911 call; and (6) prosecutorial misconduct during summation. (Pet. 3; Pet'r's Appellate Division Brief, annexed to Resp't's Opp'n as Ex. F, Docket Entry No. 7-7.) The Appellate Division affirmed the conviction on November 25, 2015. *People v. Mullins*, 20 N.Y.S.3d 413 (App. Div. 2015). Petitioner sought leave to appeal from the New York Court of Appeals, reiterating the claims raised to the Appellate Division. (Pet'r's Letter Brief, annexed to Resp't's Opp'n as Ex. I, Docket Entry No. 7-7.) The New York Court of Appeals denied leave to appeal on April 4, 2016. *People v. Mullins*, 27 N.Y.3d 1003 (2016).

---

[3] Before trial, the court ruled that if Petition testified at trial, he could be cross-examined about his prior conviction for murder in the second degree. (Jury Selection Tr. 18–19, annexed to Resp't's Opp'n as Ex. C, Docket Entry No. 7-2.) Petitioner claims that because of this ruling, he did not testify in his own defense. (Pet'r's Appellate Division Brief 40, annexed to Resp't's Opp'n as Ex. F, Docket Entry No. 7-7.)

### c. Motion to vacate Petitioner's conviction

On March 21, 2017, Petitioner filed a 440 Motion to vacate his conviction in state court. (Pet. 4; Section 440 Motion ("440 Mot.") 1–2, annexed to Resp't's Opp'n as Resp't's Ex. L, Docket Entry No. 7-7.) Petitioner made three arguments in support of his motion: (1) the prosecutor impaired the integrity of the grand jury proceedings when she allowed the use of perjured testimony to secure his indictment, (Pet. 4; 440 Mot. 1); (2) the prosecutor knowingly allowed a witness to testify falsely regarding a material issue on the case and failed to correct the false testimony, depriving him of his constitutional right to a fair trial, (Pet. 4; 440 Mot. 1–2); and (3) trial counsel failed to investigate both the facts and the law related to his defense, denying him his constitutional right to effective assistance of counsel, (Pet. 4–5; 440 Mot. 2).

#### i. Challenge to grand jury proceedings

Petitioner argued that the prosecutor impaired the integrity of the grand jury proceedings when she allowed the use of perjured testimony to secure his indictment. (Pet. 4; 440 Mot. 1.) Petitioner alleges that Pinilla testified falsely at the grand jury that he was shot in the stomach and the hip, (Affidavit in Supp. of Section 440 Mot. ("Aff. in Supp.") 5–8, annexed to Resp't's Opp'n as Resp't's Ex. L, Docket Entry No. 7-7 (citing Grand Jury Tr. 12–13)), because the medical records show that Pinilla was shot in the lower back and the buttocks, (*id.* at 8–12 (citing Medical Records, annexed to 440 Mot. as Pet'r's Exs. B through D, Docket Entry No. 7-7)), and Pinilla's trial testimony is that he was shot in his hip and his back, not in his stomach, (*id.* at 5 (citing Trial Tr. A 90–91)).

#### ii. Deprivation of right to fair trial

Petitioner also argued that he was deprived of his constitutional right to a fair trial because the prosecutor knowingly allowed a witness to testify falsely regarding a material issue on the case and failed to correct the false testimony. (Pet. 4; 440 Mot. 1–2.) Petitioner alleges

that Pinilla testified falsely when he stated that he faced Petitioner and the shooter when the shooter shot him, because the medical evidence and testimony of Dr. Jegede established that the shooter shot Pinilla twice and that one shot entered Pinilla's left buttock and exited his left thigh and the other shot entered Pinilla's lower back, injuring his rectum and small bowel and fracturing his hip joint. (Aff. in Supp. 13–14 (first citing Medical Records; and then citing Trial Tr. B 431, 435–36, 446–47, 460–66, 481–82).) Petitioner argued that Pinilla falsely testified that he saw who shot him in order to bolster his story that he "observed [Petitioner] pass a gun to [the shooter], and order [the shooter] to shoot him." (*Id.* (citing Trial Tr. A 108).) Petitioner states that his sister and friend "categorically den[y] Pinilla's account" and attaches affidavits from them in support of his motion. (*Id.* at 16 (citing Affidavits of Yesenia Nunez and Hopeton Suarez ("Affidavits of Nunez and Suarez"), annexed to 440.10 Mot. as Pet'r's Exs. E and F, Docket Entry No. 7-7).)

### iii. Ineffective assistance of trial counsel

Petitioner further argued that he was denied his constitutional right to effective assistance of trial counsel because counsel failed to investigate both the facts and the law related to his defense. (Pet. 4–5; 440 Mot. 2.) According to Petitioner, trial counsel failed to review the grand jury testimony and the medical evidence and was therefore unable to establish that (1) Pinilla testified falsely before the grand jury and at trial, and (2) the prosecution knowingly allowed the false testimony to go uncorrected. (Aff. in Supp. 22–23.)

### d. The petition and motions to hold it in abeyance and to amend

On May 4, 2017,[4] Petitioner filed a timely petition with the Court. (Pet. 7–21.)

---

[4] Pursuant to the prison mailbox rule, Petitioner's habeas petition is deemed filed when he delivered it to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266 (1988).

Petitioner raises the same claims he raised on direct appeal. (*Id.*)

Petitioner seeks to hold his petition in abeyance until his 440 Motion is decided and to amend his petition to include his claims that are included in the 440 Motion.[5] (Pet. Mot. 1–3.) Petitioner argues that:

> his reasonable confusion about the interplay between trial counsel's failure to familiarize himself with the law and the facts of the case [are sufficient] to counter the perjured testimony of Augustin[6] Pinilla through documentary proofs in his possession, or for the prosecutor's failure to correct the incorrect testimony of Augustin Pinilla at the grand jury and/or during trial constitutes "good cause" for his failure to exhaust his claims earlier.

(Pet'r's Reply 3, Docket Entry No. 14.) Petitioner argues that as a layman, he could not have known that he had a colorable claim for ineffective assistance of counsel. (*Id.* at 4.) Petitioner also argues that the claims are intertwined with each other and are meritorious. (*Id.* at 4–5.)

Respondent argues that the Court should deny Petitioner's motion to hold his petition in abeyance because his claims are meritless and a stay as to some of Petitioner's claims would be futile because they are procedurally barred. (Resp't's Mem. in Opp'n to Stay Mot. ("Resp't's Mem. in Opp. to Stay") 2, Docket Entry No. 13 (citing Resp't's Opp'n to 440 Mot. ("Resp't's Opp'n to 440 Mot."), annexed to Resp't's Opp'n as Resp't's Ex. M, Docket Entry No. 7-7).) Respondent does not address Petitioner's motion to amend his petition. *Id.*

---

[5] Petitioner states on page one of his motion that he seeks to amend his petition to include his claim of ineffective assistance of counsel. (Pet. Mot. 1.) However, on page three of his motion he states that he seeks to "later amend" his petition to include "the claims currently pending before the State court." (Pet. Mot. 3.) The Court liberally construes Petitioner's request as seeking to amend his petition to include each of the three claims raised in his 440 Motion after the 440 Motion is decided.

[6] Petitioner misspells Pinilla's first name.

## II. Discussion

### a. Standards of review

When a habeas petition is a "mixed" one — that is, one containing both exhausted and unexhausted claims — a district court has discretion to hold the petition in abeyance to permit a petitioner to exhaust the unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

A motion to amend a habeas petition is analyzed under the standards set forth in Rule 15(a) of the Federal Rules of Civil Procedure. *See Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815–17 (2d Cir. 2000). "Rule 15 provides that 'leave shall be freely given when justice so requires.'" *Ching*, 298 F.3d at 180 (quoting Fed. R. Civ. P. 15(a)). A court, however, may deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Id.* A district court may also deny leave "when amendment would be futile." *Pierre v. Ercole*, 607 F. Supp. 2d 605, 607 (S.D.N.Y. 2009) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### b. Stay and abeyance

Although Petitioner styled his motion as a request to hold his petition in abeyance until his 440 Motion is resolved and Respondent discussed the *Rhines* factors in its opposition, the stay analysis is inapposite because Petitioner's petition is not a "mixed" petition as it only contains the exhausted claims presented to the Court of Appeals. *See Spells v. Lee*, No. 11-CV-1680, 2011 WL 2532907, at *1 (E.D.N.Y. June 23, 2011) (finding that the "petition contain[ed] only exhausted claims and is therefore not a 'mixed petition'"). Therefore, the Court denies Petitioner's request to hold his petition in abeyance. *See Williams v. Sheahan*, No. 11-CV-2435,

2011 WL 2437496, at *1 (E.D.N.Y. June 15, 2011) (holding that a petition that is not mixed is not subject to the *Rhines* analysis); *see also Kalu v. New York*, No. 08–CV–4984, 2009 WL 7063100, at *5 (E.D.N.Y. Sept. 15, 2009) ("[W]here, as here, the petition is not mixed, and contains only unexhausted claims, federal courts that have considered the issue are in agreement that the stay-and-abeyance procedure described in *Rhines* is not available." (collecting cases)), *report and recommendation adopted*, *Ndukwe v. New York*, No. 08–CV–4984, 2010 WL 4386680 (E.D.N.Y. Oct. 28, 2010).

### c. Leave to amend petition

Petitioner seeks leave to amend his petition after his 440 Motion is decided to include the claims raised in that motion. For the reasons explained below, the Court denies Petitioner's application for leave to amend.

### i. Challenge to grand jury proceedings and deprivation of right to fair trial

Convictions based on perjured testimony are analyzed under the due process clause of the Fourteenth Amendment. *Drake v. Portuondo*, 321 F.3d 338, 344–45 (2d Cir. 2003); *see also Bradley v. West*, 2005 WL 3276386, at *14 (E.D.N.Y. Dec. 2, 2005) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (same)). "Due process requires not only that the prosecutor avoid soliciting false testimony, but that he not conceal it, and that he not allow it to go uncorrected when it has occurred." *Perkins v. LeFevre*, 642 F.2d 37, 40 (2d Cir. 1981). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id.* (citing *United States v. Sanchez*, 969 F.2d 1409,

9

1414–15 (2d Cir. 1992)). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Cromite*, 727 F.3d 194, 221 (2d Cir. 2013) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)) (internal quotation marks omitted). The relevant inquiry is "(1) whether false testimony was introduced, (2) whether that testimony either was or should have been known to the prosecution to be false, (3) whether the testimony went uncorrected, and (4) whether the false testimony was prejudicial in the sense defined by the Supreme Court in *Agurs*." *Shih Wei Su v. Filion*, 335 F.3d 119 (2d Cir. 2003).

### 1. Challenge to grand jury proceedings

Petitioner seeks to amend the petition to assert a claim that the prosecutor impaired the integrity of the grand jury proceedings when she knowingly allowed Pinilla to testify falsely that the shooter shot him in the stomach and the hip at Petitioner's request to secure his indictment. (Aff. in Supp. 5–8.) Petitioner claims that because the prosecutor reviewed Pinilla's medical records, she was aware that Pinilla was not shot in the stomach and the hip as he testified to before the grand jury, (*id.* at 9), but rather in his buttock and lumbar region.

Amendment to include this claim would be futile because Petitioner has not shown that Pinilla's grand jury testimony that he was shot in the stomach and the hip was perjurious rather than an honest mistake about his injuries. As Dr. Jegede testified, Petitioner sustained "abdominal injuries" and was deemed to be bleeding in the abdomen, (Trial Tr. B 431–32) and his "[a]bdomen [was] left open due to excessive bleeding[,]" (Medical Records). Based on these facts, Pinilla could have mistakenly believed that he was shot in the stomach. *Monteleone*, 257 F.3d at 219 (holding that "incorrect testimony resulting from confusion, mistake, or faulty

10

memory" does not constitute perjury). Moreover, the prosecution did not receive Mr. Pinilla's medical records until August 7, 2012, almost a year after the grand jury proceedings on September 22, 2011. (Resp't's Opp'n to 440 Mot. 10 (citing Subpoena, annexed to Resp't's Opp'n to 440 Mot. as Resp't's Ex. 1, Docket Entry No. 7-7); Resp't's Opp'n to 440 Mot. 10 (citing Request for Medical Record, annexed to Resp't's Opp'n to 440 Mot. as Resp't's Ex. 2, Docket Entry No. 7-7).) Thus, the prosecution did not present evidence that it knew to be false.

Further, it appears that this claim is not cognizable on habeas review because Petitioner's conviction following a jury trial cured any alleged improprieties in the grand jury proceedings. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); *Lopez v. Riley*, 865 F.2d 30, 33 (2d Cir. 1989) (Petitioner's claims of impropriety before the grand jury, which concern "the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in examining the law," were determined to be harmless under *Mechanik* because each of the alleged improprieties was cured in the trial before the petit jury, which convicted petitioner); *Velazquez v. Poole*, 614 F. Supp. 2d 284 (E.D.N.Y. 2007) (finding that a conviction by a petit jury renders harmless any errors in the grand jury process where the petitioner alleged that the prosecutor elicited perjurious testimony).

### 2. Deprivation of right to fair trial

Petitioner seeks to amend the petition to assert a claim that he was deprived of his constitutional right to a fair trial arguing that the prosecutor knowingly allowed Pinilla to testify falsely that he faced Petitioner and the shooter when the shooter shot him and failed to correct the false testimony. (Aff. in Supp. 13.) Petitioner suggests that because the shooter shot Pinilla

11

in the lower back and buttocks, Pinilla was not able to observe Petitioner pass a gun to the shooter or observe Petitioner order the shooter to shoot him. (*Id.* at 12–13.) Petitioner also argues that his sister and the shooter categorically deny Pinilla's account and attaches affidavits from them in support of his petition. (*Id.* at 16 (citing Affidavits of Yesenia Nunez and Hopeton Suarez ("Affidavits of Nunez and Suarez")).)

Amendment to include this claim would be futile because Petitioner has not established that Pinilla gave false testimony. As a practical matter, the fact that the shooter shot Pinilla in the back does not preclude Pinilla from having seen the transfer of the gun from Petitioner's sister to Petitioner and to the shooter or from having heard Petitioner order the shooter to shoot him because he was initially facing the shooter. Furthermore, any alleged inconsistencies between Pinilla's grand jury and trial testimony or between his trial testimony and the medical evidence do not rise to the level of perjury because Pinilla did in fact sustain injuries to his stomach, and therefore, his testimony that he was shot in the stomach was, at most, a mistake. *See Monteleone*, 257 F.3d at 219 (holding that "incorrect testimony resulting from confusion, mistake, or faulty memory" does not constitute perjury).

### ii. Ineffective assistance of trial counsel

Petitioner seeks to amend the petition to assert a claim that he was denied his constitutional right to effective assistance of trial counsel because counsel failed to investigate both the facts and the law related to his defense and was therefore unable to establish that Pinilla testified falsely at the grand jury and at trial, and that the prosecution knowingly allowed the false testimony to go uncorrected. (Aff. in Supp. 22–23.)

"The Sixth Amendment right to counsel is the right to effective assistance of counsel." *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "A defendant who claims to have been denied effective

12

assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at ---, 137 S. Ct. at 775 (citing *Strickland*, 466 U.S. at 687). "To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." *Premo v. Moore*, 562 U.S. 115, 121 (2011) (internal citations and quotation marks omitted). Prejudice has been defined by the Supreme Court as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 775. "Recognizing the 'tempt[ation] for a defendant to second guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563 U.S. at 189 (alteration in original) (quoting *Strickland*, 466 U.S. at 689–90); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). On habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner has not shown that Pinilla's testimony was perjurious rather than an honest mistake about his injuries. *Monteleone*, 257 F.3d at 219. Therefore, counsel's failure to argue that Pinilla testified falsely at the grand jury and at trial, or that the prosecution knowingly allowed the false testimony to go uncorrected, cannot constitute deficient performance. *See e.g., United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008) ("failure to make a meritless argument

does not amount to ineffective assistance" (internal citation and quotation marks omitted)). As a result, amendment to include this claim would be futile.

### III. Conclusion

For the foregoing reasons, the Court denies Petitioner's motion to hold his petition in abeyance and to amend the petition.

SO ORDERED:

      s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 6, 2018
      Brooklyn, New York