UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WILLIAM MULLINS,                         :

                Petitioner,            :        **MEMORANDUM DECISION**

       - v -                          :        17-cv-2958 (DC)

HAROLD D. GRAHAM, Superintendent of      :
Auburn Correctional Facility,

                                :

              Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        WILLIAM MULLINS, DIN 13A2266
                            Petitioner *Pro Se*
                            Auburn Correctional Facility, P.O. Box 618
                            Auburn, NY 12582

                            JUSTIN C. BONUS, Esq.
                            118-35 Queens Boulevard., Suite 400
                            Forest Hills, NY 11375
                                   Attorney for Petitioner

                            ERIC GONZALEZ, Esq.
                            Kings County District Attorney
                            By:      Rhea A. Grob, Esq., Assistant District Attorney
                            350 Jay Street
                            Brooklyn, NY 11201
                                 Attorney for Respondent

CHIN, Circuit Judge:

         On May 2, 2013, following a jury trial, petitioner William Mullins was

convicted in the Supreme Court of the State of New York, Kings County (Riviezzo, *J.*),

of first-degree assault and second-degree criminal possession of a weapon.  Dkt. 7 at 2.

His convictions were affirmed by the Appellate Division, Second Department, *People v. Mullins*, 20 N.Y.S.3d 413 (2d Dep't 2015) ("*Mullins I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Mullins*, 59 N.E.3d 1224 (N.Y. 2016) ("*Mullins II*") (Stein, J.).

On May 7, 2017, proceeding *pro se*, Mullins filed the instant petition in the Eastern District of New York pursuant to 28 U.S.C. § 2254 (the "Petition").  Dkt. 1. Respondent Harold D. Graham, the superintendent of the Auburn Correctional Facility, represented by the Kings County District Attorney's Office, opposed the Petition on July 27, 2017.  Dkt. 7 at 5.

On May 5, 2020, Mullins filed a counseled motion to amend the Petition. Dkt. 20.  The motion to amend, which was fully briefed May 19, 2020, remains outstanding.  Dkt. 22, 23.  This case was reassigned to the undersigned on February 3, 2023.

For the reasons below, the motion to amend is GRANTED to the extent set forth below and the Petition is DENIED.

## STATEMENT OF THE CASE

I.      **The Facts**[1]

The evidence at trial established the following:

On July 6, 2011, Mullins and his sister, Yesenia Nunez, engaged in an altercation with their neighbor, Agustin Pinilla, in front of their Brooklyn apartment building.  Dkt. 7 at 7-8.  The altercation arose from a verbal dispute between Pinilla, Nunez, and Aminda Cruz, Mullins's and Nunez's mother.  During the dispute, Nunez pushed and hit Pinilla after Pinilla purportedly insulted Cruz.  Pinilla left the premises but returned after learning that Mullins wanted to speak with him.  *Id.*

Upon returning to the building, Pinilla saw that Mullins, Nunez, and Hopeton Suarez were standing outside.  Mullins approached and threw a punch at Pinilla, and Pinilla hit him back.  Mullins walked back to Nunez and Suarez, at which point Nunez handed him a handgun.  Mullins gave the weapon to Suarez and told him to shoot Pinilla.  Suarez shot Pinilla twice.  *Id.* at 2, 8.

Pinilla managed to escape the scene and encountered an acquaintance, Olene Smith, who was sitting nearby in her car.  He entered the car and told Smith he needed to be taken to the hospital because he had just been shot.  *Id.* at 9.  Smith drove a short distance before flagging down a police officer, at which point Pinilla

---

[1]      The facts are drawn from the Respondent's Opposition to the Petition, the Respondent's Brief in the Appellate Division, Second Department, and the state court trial transcripts.  *See* Dkt. 7; 7-7 at 93-102; 7-1 to 7-6.

3

had exited the car and lay bleeding on the sidewalk.  *Id.* at 9-10.  He was eventually

taken to the hospital and treated for life-threatening injuries from the two gunshot

wounds.  Dkt. 7-7 at 100.

## II.   Procedural History

### A.   *State Supreme Court Proceedings*

Mullins, Nunez, and Suarez were indicted in Kings County and

charged with second-degree attempted murder, first-degree assault, second-degree

criminal possession of a weapon, and related counts.  Dkt. 7 at 2.

During a pre-trial hearing, the prosecutor made a *Sandoval* application

notifying the court that, should Mullins choose to testify, the government would

seek to cross-examine him about a prior second-degree murder conviction

involving a firearm that had occurred in the vicinity of the location where Suarez

had shot Pinilla.  Dkt. 7-1 at 91-93.  Mullins had been sentenced to a prison term of

six years to life and lifetime parole for this conviction.  *Id*. at 92.  Mullins's counsel

opposed the application, arguing that such questioning amounted to a highly

prejudicial propensity argument and had no bearing on Mullins's credibility.  *Id*. at

93-95.  Instead, he proposed that the government be permitted to cross-examine

Mullins on whether he had a prior felony conviction without discussing the details

of any such conviction.  *Id*. at 94-95.  The court ruled that the government could

inquire about the date on which Mullins was convicted for second-degree murder

4

but could not question him about the use of a firearm, the location of the murder, or the sentence.  Dkt. 7-2 at 20-23.  Mullins did not testify at trial.  Dkt. 7 at 13.

Trial commenced on April 3, 2013.  Dkt. 7-3 at 5.  The government called several witnesses, including eyewitnesses present at the shooting, the NYPD officers who had found Pinilla on the sidewalk, the NYPD detective who visited and questioned Pinilla several times at the hospital, the doctor who treated Pinilla, and Pinilla himself.  Dkt. 7 at 7-12.  Before Pinilla testified, the court reminded him that he was not to testify as to his understanding or knowledge of the defendants' criminal histories.  Dkt. 7-3 at 56-57.  The government also presented video surveillance footage of the shooting taken from across the street.  Dkt. 7-3 at 123-43.  The defense called one witness, an EMT who had treated Pinilla at the scene.  Dkt. 7-5 at 127-39.

Three of the government's witnesses had called 911 to report the shooting. Claude Bertin and Vincent Harry called 911 after separately witnessing the incident from across the street, and Smith called 911 while she was driving with Pinilla.  Dkt. 7-4 at 84-85 (Bertin); 7-4 at 251 (Harry); 7-4 at 119 (Smith).  After Bertin and Smith testified, the government notified the court that the three 911 calls could not be located in the police database.  Dkt. 7-4 at 143-45.  The defense requested an adverse inference instruction for the missing 911 calls.  *Id*. at 145-49.  Several days later, the government located and played a recording of Smith's 911 call in court.  Dkt. at 7-5 at 145-50.  The court recalled Smith so that the defense could cross-examine her about the call.  During

its jury charge, the court gave an adverse inference instruction with regards to Bertin and Harry's missing 911 calls.  Dkt. 7-6 at 11.

During jury deliberations, a note written by Juror 2 and signed by the foreperson notified the court that Juror 11 had made threatening remarks towards Juror 2.  The note indicated that "[Juror 11] stated she will be waiting for me after duty with her granddaughter, threatening to hurt me."  Dkt. 7 at 21; 7-6 at 89.  When the court questioned Juror 2 about the threat, Juror 2 stated that she was not afraid of Juror 11 but wanted the incident to be on the record.  When the court queried whether Juror 2 could remain impartial and continue deliberating with an open mind, Juror 2 confirmed that she could.  Dkt. 7-6 at 94.

The court then examined Juror 11 about the threat.  Juror 11 expressed disagreement with Juror 2 but stated that she could still deliberate with Juror 2, exchange opinions and beliefs, and keep an open mind.  Dkt. 7 at 24; 7-6 at 106.  The court instructed Juror 11 that, despite any disagreement, everyone on the jury had to express their opinions in a respectful and non-threatening fashion.  Dkt. 7-6 at 106.  Mullins's and Suarez's attorneys later moved for a mistrial and argued that the court should have inquired further into the substance of Juror 11's remark to assess whether she was fit to continue to serve.  Dkt. 7-6 at 158-61.  The court denied the motion, finding that the key issue was not the substance of the threat but its effect on both jurors' abilities to be fair and impartial.  Dkt. 7-6 at 162.

Mullins was found guilty of first-degree assault and second-degree criminal possession of a weapon.  Dkt. 7 at 3; 7-6 at 174.  He was acquitted of the second-degree attempted murder charge.  Dkt. 7-6 at 173.  Nunez and Suarez were acquitted of all charges.  *Id.* at 174-75.  Mullins was sentenced to concurrent prison terms of 15 years for the assault count and 10 years for the possession count, followed by five years' post-release supervision.  Dkt. 7 at 2.

**B.    *Post-Conviction Proceedings***

Mullins appealed to the Appellate Division, Second Department, with the assistance of counsel.  He raised six claims:  (1) the trial court's *Sandoval* ruling violated his due process rights and right to present a defense; (2) the verdict was repugnant and inconsistent; (3) the conviction was not supported by legally sufficient evidence and was against the weight of the evidence; (4) the trial court erred by failing to conduct a meaningful inquiry into the threat made by one juror to another during deliberations; (5) the trial court erred by denying petitioner's mistrial motion based on the prosecution's late disclosure of the 911 call and the failure to preserve the two other 911 calls; and (6) prosecutorial misconduct during summation.  Dkt. 1 at 3; 7-7 at 21-29.

On November 25, 2015, the Appellate Division affirmed Mullins's convictions.  *See Mullins I,* 20 N.Y.S.3d at 414.  The Appellate Division held that the trial court's *Sandoval* ruling "was a provident exercise of discretion" that achieved

7

"an appropriate balance between the probative value of the defendant's prior conviction on the issue of his credibility and the potential prejudice to the defendant." *Id*. It also held that the evidence was legally sufficient and that the verdict was neither repugnant nor against the weight of the evidence. *Id*. On the issue of the juror threat, the Appellate Division held that the trial court's response "was meaningful and sufficiently addressed the problem which motivated the communication." *Id*. Finally, the Appellate Division rejected the 911 call claim as without merit and held that the prosecutorial misconduct claim was similarly meritless and unpreserved for appellate review. *Id*. The New York Court of appeals denied leave to appeal on April 4, 2016. *See Mullins II*, 59 N.E.3d at 1224.

On March 21, 2017, Mullins moved *pro se* to vacate the judgment pursuant to N.Y.C.P.L. § 440.10. Dkt. 7-7 at 182. Mullins raised the following claims: (1) the prosecutor impaired the integrity of the grand jury by presenting false testimony, (2) the prosecutor knowingly used this false testimony at trial, (3) ineffective assistance of trial counsel, (4) actual innocence, and (5) newly discovered evidence. Dkt. 22-1 at 3-4. The newly discovered evidence consisted of testimony by Suarez, Nunez, several Department of Corrections Parole Officers, and Mullins. *Id*. at 1. The Supreme Court, Kings County, held an evidentiary hearing as to Mullins's claims of actual innocence and newly discovered evidence, at which Mullins called all witnesses. Dkt. 22 at 2-3. The court denied the § 440.10 motion

8

on September 6, 2019 (Riviezzo, *J.*), and the Appellate Division denied leave to

appeal.   Dkt. 22-1 at 12; 22 at 3.

### C.   *Proceedings Below*

Mullins filed the Petition *pro se* on May 7, 2017, raising the same six

claims he raised on appeal to the Appellate Division.   Dkt. 1 at 3.   On August 14,

2017, Mullins moved in this Court to stay his Petition pending the resolution of his

§ 440.10 motion, and also sought leave to amend the Petition to add his claims from the

§ 440.10 motion.   Dkt. 9.   The Court denied the motion on March 6, 2018.   Dkt. 16.

Mullins then filed a counseled motion to amend the Petition on May 5,

2020.   Dkt. 20.   Respondent opposed, and Mullins filed a reply.   Dkts. 22, 23.

### *DISCUSSION*

### I.   Motion for Leave to Amend

Mullins's pending motion initially sought to amend the Petition, but

Mullins later clarified that he sought to "supplement" the sufficiency claim in the

Petition with the newly discovered evidence raised in his § 440.10 motion.   Dkt. 20; 23 at

1.   Mullins previously sought leave to amend to add the actual innocence claim to the

Petition, which this Court denied.   Dkt. 16.

The motion to amend is granted to the extent that the Court's analysis of

Mullins's sufficiency claim will consider the newly discovered evidence raised in the

§ 440.10 proceedings.   To that extent, the Petition is deemed amended so that the

additional evidence is considered with respect to Mullins's sufficiency claim. *See* Fed.

R. Civ. P. 15(a).

## II.     Federal Review of State Convictions

### A.     *Applicable Law*

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).   Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d

556, 560 (2d Cir. 2015).   "A federal court may reverse a state court ruling only where

it was 'so lacking in justification that there was . . . [no] possibility for fair-minded

disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

When considering a sufficiency argument on habeas review, "[a]

federal court must look to state law to determine the elements of the crime." *Fama v.*

*Comm'r Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted).   A federal

court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of New York,* 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted). The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama,* 235 F.2d at 811 (citation omitted). A "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Id.* (citation omitted). Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson,* 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith,* 565 U.S. 1, 2 (2011)).

Similarly, purported evidentiary errors are rarely a basis for habeas relief. The Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky,* 476 U.S. 683, 689 (1986). As trial judges are "called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence" in any given criminal trial, "the Constitution leaves to the judges who must make these decisions 'wide latitude'" in ruling on the admissibility of evidence. *Id.* at 689-

11

90 (citation omitted).

Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted). The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it.'" *Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that the state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape,* 657 F.3d 97, 103-04 (2d Cir. 2011) (citations omitted). Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis,* 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on

12

appeal).

Finally, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell,* 556 U.S. 449, 465 (2009) (citations omitted).  Federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," as long as the procedural bar is "adequate to support the judgment."  *Murden v. Artuz,* 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).

B.    *Analysis*

Mullins raises six claims in the Petition: (1) the trial court's *Sandoval* ruling erroneously prevented him from testifying, (2) the verdict was repugnant and inconsistent, (3) the evidence adduced at trial was legally insufficient to establish guilt, (4) the trial court failed to conduct a meaningful inquiry into a threat made by one juror against another juror during deliberations, (5) the trial court erred in denying a motion for mistrial after the prosecution made late disclosure of one 911 call and failed to preserve two other 911 calls, and (6) prosecutorial misconduct during summation deprived him of a fair trial.

None of Mullins's six claims provide a basis for habeas relief and are, in any event, meritless.  I address each claim in turn.

1.    **The Trial Court's *Sandoval* Ruling**

13

First, Mullins argues that the trial court abused its discretion in allowing cross-examination regarding his prior murder conviction if he chose to testify.  Dkt. 1 at 7-8.  The Appellate Division held that the court's *Sandoval* ruling constituted a "provident exercise of discretion" that properly balanced the probative value of the proposed cross-examination with its prejudicial effect.  *Mullins I*, 20 N.Y.S.3d at 414.

As a threshold matter, this *Sandoval* claim is not cognizable on habeas review because Mullins did not testify at trial.  The Supreme Court has held that a defendant must testify to raise and preserve a claim of improper impeachment with a prior conviction.  *Luce v. United States*, 469 U.S. 38, 43 (1984).[2]  Mullins's failure to testify is fatal to his claim because, without his testimony, "any possible harm flowing from a district court's [] ruling permitting impeachment by a prior conviction is wholly speculative."  *Id.* at 41.

Even if this claim were reviewable, it fails on the merits.  The trial court's ruling and the Appellate Division's affirmance of that decision were reasonable and are entitled to deference.  In general, state court evidentiary rulings are matters of state law that do not raise constitutional issues.  *See Warren v. Miller*,

---

[2]     Though *Luce* involved a ruling interpreting the Federal Rules of Evidence, its holding has since been applied to *Sandoval* rulings on habeas review.  *See, e.g., Grace v. Artuz*, 258 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2003) (holding that a petitioner's *Sandoval* claim was not cognizable on habeas review because he did not testify at trial).

78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000).  The petitioner bears a very heavy burden

of establishing the deprivation of a constitutional right.  *Id*. (citing *Benitez v.*

*Senkowski*, 1998 WL 668078, *4 (S.D.N.Y. Sept. 17, 1998)).  In the context of a *Sandoval*

hearing, the court is afforded broad discretion in balancing the probative value of

the conduct to the defendant's credibility with the prejudicial effect of such

evidence.  *Id*.

       Reviewing the transcript of the *Sandoval* hearing and the court's ruling,

I conclude that the trial court properly balanced the probative value and prejudicial

effect of the testimony.  Mullins argued that the prejudicial effect of the testimony

was high due to the similarity between the second-degree murder conviction and

the second-degree attempted murder charge; he also asserted that the prior

conviction was too remote to be pertinent.  The court rejected these arguments and

found that the evidence of the conviction bore directly on Mullins's "honesty and

integrity" because it demonstrated his willingness to place his "own self-interests

ahead of ethical principles or the interests of society."  Dkt. 7-2 at 20; *see also People v.*

*Sandoval*, 314 N.E.2d 413, 417-18 (N.Y. 1974).  Moreover, the court limited the scope

of the testimony and precluded questioning about Mullins's use of a firearm during

the murder, the location of the crime, or the sentence.  Dkt. 7-2 at 20-23.  Finally, the

jury acquitted Mullins of the second-degree attempted murder charge.  Mullins

therefore cannot show that the trial court's ruling was so prejudicial as to constitute

fundamental unfairness.  *See Warren*, 78 F. Supp. 2d at 135 (holding that evidentiary rulings "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness").

Accordingly, this claim is not cognizable on habeas review and fails on the merits.

### 2.    Repugnancy of the Verdict

In his second claim, Mullins argues that the jury verdict is repugnant and inconsistent because his co-defendants were acquitted of the same crimes. Dkt. 1 at 9-10.  The Appellate Division found that the verdict was not repugnant despite Nunez and Suarez's acquittals.  *See Mullins I,* 20 N.Y.S.3d at 414.

The Supreme Court has held that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera,* 454 U.S. 339, 345 (1981).  This is so in cases where the verdicts in separate charges against a single defendant are inconsistent, as well as in cases where the verdicts for co-defendants in a joint trial are inconsistent.  *Id*.  Here, the trial court submitted to the jury the same three charges for each defendant:  second-degree attempted murder, first-degree assault, and second-degree criminal possession of a weapon.  Dkt. 7-6 at 26.  The court instructed the jury to evaluate the evidence separately with respect to each defendant and to return separate verdicts, noting that the jury was not required to find each defendant guilty of the same crime.  Dkt. 7-6 at 5-6.  The court also gave

instructions on accomplice liability and explained that each defendant would be guilty if he or she acted "personally or by acting in concert with another person" in the commission of the charged crimes.  Dkt. 7-6 at 25-35, 69-76, 138-145, 154-157.

The Appellate Division's decision that the verdict was not repugnant was reasonable and is accorded "substantial deference." *Fischer*, 780 F.3d at 560.  In reaching its decision, the Appellate Division explained that reviewing a claim of repugnancy is "based solely on a review of whether the verdict is inherently inconsistent when view in light of the trial court's charge regardless of its accuracy." *Mullins I*, 20 N.Y.S.3d at 414.  It found that the trial court clearly charged the jury to reach separate verdicts for the three defendants and "never stated that the defendant's guilt was dependent on the guilt of either of his codefendants." *Id.* (citing *People v. Green*, 525 N.E.2d 742, 743 (N.Y. 1988); *People v. Drayton*, 732 N.Y.S.3d 568, 568 (2d Dep't 2001)).

Mullins argues he cannot be liable of first-degree assault under the theory of accomplice liability if both his co-defendants were acquitted, but the trial court did not state that Mullins's guilt was dependent on a finding of guilt for his co-defendants.  Instead, the court clearly instructed the jury that they were to evaluate the evidence separately as to each defendant.  Because the verdict is not inconsistent when viewed in light of the elements charged, the Appellate Division's decision is reasonable.  *See People v. Muhammad*, 959 N.E.2d 463, 467-68 (N.Y. 2011).

17

Therefore, this claim does not provide a basis for habeas relief.

### 3.   The Sufficiency of the Evidence

In his third claim, Mullins argues that the evidence was legally insufficient.  Dkt. 1 at 12-13.  The Appellate Division rejected this claim because it held that the evidence "was legally sufficient to prove the defendant's guilt beyond a reasonable doubt."  *Mullins I*, 20 N.Y.S.3d at 414.  The Appellate Division also conducted an independent review of the facts, citing N.Y. Crim. Proc. Law § 470.15(5), and stated that it was "satisfied that the verdict of guilt was not against the weight of the evidence."  *Id.*

The Appellate Division's rejection of the sufficiency argument is a decision on the merits that is accorded deference.  *Fischer*, 780 F.3d at 560. Moreover, it cannot be said that the Appellate Division's conclusion was "objectively unreasonable."  *Coleman*, 566 U.S. at 651.  Under New York law, a person is guilty of assault in the first degree when "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon."  N.Y. Penal Law § 120.10 (McKinney).  A person is guilty of criminal possession of a weapon in the second degree when "[w]ith intent to use the same unlawfully against another, such person . . . possesses a loaded firearm."  N.Y. Penal Law § 265.03(1)(b) (McKinney). Viewing the evidence presented at trial in the light most favorable to the prosecution, it is clear that a rational jury "could have found the essential elements of the crime[s]

18

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The jury heard testimony from three eyewitnesses, including Pinilla, that Mullins possessed the handgun before giving it to Suarez, that he gave it to Suarez with instructions to shoot Pinilla, and that Suarez shot Pinilla. Video surveillance of the incident was also presented. Therefore, viewing the evidence provided in the light most favorable to the government, *see Fama*, 235 F.2d at 811, a rational jury could have found beyond a reasonable doubt that Mullins possessed the handgun and had the requisite intent to cause serious physical injury to Pinilla.

As to the newly discovered evidence deemed to supplement this claim, a rational jury still could have found Mullins guilty beyond a reasonable doubt. The testimonies of Nunez and Suarez were the subject of an evidentiary hearing relating to Mullins's § 440.10 motion. Suarez testified that he was not at the scene and could not have been the shooter. Dkt. 22-1 at 8. Nunez testified that she, rather than Mullins, had engaged in a physical altercation with Pinilla, but she later recanted her statement on cross-examination. Dkt. 22-1 at 11. Nunez also equivocated several times when asked to identify herself in the surveillance video, and her claim that she ran down a certain sidewalk after the incident was contradicted by the surveillance footage. *Id*.

The state court held that Mullins had not met his burden of proof, under state law, to prove by a preponderance of the evidence that the newly discovered

19

evidence would have led to a more favorable outcome. The state court found that the

testimony of the various witnesses was either consistent with the verdict, in the case of

Suarez, or not credible, in the case of Nunez. It also held that Mullins' testimony and

the testimony of parole officers did not constitute newly discovered evidence.

Accordingly, the court held that Mullins had not proven that he was actually innocent

by clear and convincing evidence and denied the § 440.10 motion. Dkt. 22-1 at 8, 12.

A claim that is "based on newly discovered evidence ha[s] never been held

to state a ground for federal habeas relief absent an independent constitutional violation

occurring in the underlying state criminal proceeding." *Ortega v. Duncan*, 333 F.3d 102,

108 (2d Cir. 2003) (internal quotation marks omitted). Not only is the state court's

denial of the § 440.10 motion an adjudication on the merits that warrants substantial

deference, *see Fischer*, 780 F.3d at 560, but the newly discovered evidence here is not so

consequential that it would have resulted in a more favorable verdict.

Mullins understandably argues that the verdicts are incongruous

because he was convicted while both the person who gave him the gun and the

shooter were acquitted. He contends that the evidence is legally insufficient

because Suarez and Nunez's acquittals necessarily mean that Mullins was found to

be the shooter. His argument, however, confuses the legal sufficiency of the

evidence with an allegation of a factual inconsistency in the verdict. *People v.

Abraham*, 1 N.E.3d 797, 801 (N.Y. 2013) ("It does not follow that . . . factual

20

inconsistency in the verdict renders the record evidence legally insufficient to support the conviction."). Review of a sufficiency claim involves an assessment of "whether the evidence adduced at trial could support any rational determination of guilt[y] beyond a reasonable doubt." *United States v. Powell,* 469 U.S. 57, 67 (1984). This analysis is "independent of the jury's determination that evidence on another count was insufficient." *Id.* Even assuming factual inconsistencies in the verdicts, the evidence was sufficient to prove that Mullins was guilty of possessing a weapon and assaulting Pinilla.

For these reasons, Mullins' insufficiency claim does not provide a basis for habeas relief.

### 4. The Court's Inquiry into the Juror Threat

Mullins next argues that the trial court erred in denying a motion for mistrial after it allegedly failed to meaningfully inquire into Juror 11's threat towards Juror 2 during deliberations. Dkt. 1 at 14-16. The Appellate Division held that the trial court's inquiry into the threat "was meaningful and sufficiently addressed the problem which motivated the communication." *Mullins I,* 20 N.Y.S.3d at 414.

The Sixth Amendment provides that a criminal defendant is entitled to a right to trial by an impartial jury. U.S. Const. amend. VI. The trial court's assessment of a juror's impartiality is a factual question, *see Thompson v. Keohane,*

516 U.S. 99, 111 (1995), that is entitled to a presumption of correctness on habeas review, *see* 28 U.S.C. § 2254(e)(1).  The petitioner bears the burden of rebutting this presumption with clear and convincing evidence.  *See id.*

Mullins has not demonstrated, by clear and convincing evidence, that he can overcome the presumption that the trial court adequately inquired into the threat and determined that the two jurors could continue to deliberate effectively. After receiving the note from Juror 2, the court questioned Juror 2 and Juror 11 separately to ask about each juror's ability to continue to deliberate and to render an impartial verdict.  Dkt. 7-6 at 92-97, 104-107.  Both jurors confirmed that they were able to continue to deliberate with one another, express their opinions, and keep an open mind.  Juror 2 further described the nature of the threat and noted her desire to put the threat on the record but stated that she was otherwise unafraid of Juror 11.  *Id.* at 94.  Similarly, Juror 11 said that she was not afraid and could continue to deliberate with Juror 2.  *Id.* at 106.  When the defense requested that the court ask Juror 11 whether she had in fact threatened Juror 2, the trial court declined because it found that the key issue was not the identity of the person who made the threat, but rather the effect of the threat on the two jurors' ability to deliberate impartially. *Id.* at 110-11.  No further issues between jurors were reported during deliberations.

The trial court conducted a methodical inquiry, as evidenced by the transcript, and properly determined that both jurors were capable and willing to

deliberate together despite any animosity that may have existed.  The Appellate Division's determination that the inquiry was meaningful and sufficient was therefore not an unreasonable determination of the facts.  Therefore, this claim does not provide a basis for habeas relief.

### 5.      The 911 calls

Mullins challenges the prosecution's handling of the three 911 calls and argues that the belated disclosure of Smith's call and the failure to preserve Bertin and Harry's calls violated his due process rights.  Dkt. 1 at 17-18.  The Appellate Division rejected this claim as being without merit.  *Mullins I*, 20 N.Y.S.3d at 415.[3]

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  The presence of bad faith turns on whether the police knew of the exculpatory value of the evidence at the time it was lost or destroyed.  *Id.* at 58.  The exculpatory value of the evidence must be apparent before the evidence was destroyed.  *California v. Trombetta*, 467 U.S. 479, 489 (1984).  The lost evidence must also "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available

---

[3]      Although the Appellate Division did not specifically address this claim, it is clear that in stating that Mullins's "remaining contention" was "without merit," it was referring to this claim about the 911 calls because this was the only claim raised on appeal that the court did not specifically mention.  If a state court summarily disposes of a claim presented on the merits, it can be assumed that the court disposed of the issue on the merits.  *See Harrington*, 562 U.S. at 98-100.  The state court adjudication in this case is still entitled to deference, even if it did not provide a reason for its ruling.  *Id.*

means." *Id.*

Here, Mullins has neither alleged bad faith by the prosecution nor demonstrated that the police knew that the calls contained evidence that Mullins could not have obtained by other means. The record indicates that the loss of the recordings was inadvertent, and the trial court did not find that the police had acted in bad faith. Dkt. 7-5 at 163. Moreover, the court sought to remedy any harm by recalling Smith for further testimony after the recording of her 911 call was located and by giving the jury an adverse inference instruction as to the two lost calls. Such an instruction can "mitigate[] the harm done to a defendant by the loss of evidence." *People v. Handy*, 988 N.E.2d 879, 882 (N.Y. 2013).

As to the delayed disclosure issue, evidence is not suppressed within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), if the prosecution discloses the evidence in time for its effective use at trial. *See United States v. Douglas*, 525 F.3d 225, 245-46 (2d Cir. 2008). Under *Brady*, the prosecution's suppression of evidence that is material to guilt or punishment violates a criminal defendant's due process, irrespective of bad faith. 373 U.S. at 87. If the evidence is produced "in time for its effective use," however, the government does not violate a defendant's due process rights. *In re United States (Coppa)*, 267 F.3d 132, 144 (2d Cir. 2001). There is no *Brady* violation unless the earlier disclosure of the evidence would have produced a different result at trial or reframed the whole case in a manner that would

24

"undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *Edkin v. Travis*, 969 F. Supp. 139, 143 (W.D.N.Y. 1997) (*Brady* not violated where defense counsel eventually received the withheld materials and had an opportunity to cross-examine the witness about them).

Mullins cannot establish that he suffered any prejudice from the late disclosure or that his counsel was precluded from using it at trial.  Though Mullins's counsel did not cross-examine Smith after she was recalled, he cited her 911 recording in his summation to impeach Pinilla's testimony.  More specifically, counsel argued that Pinilla's testimony that he could not have told the EMTs about the shooting or the identity of the assailants because he had passed out in the car was undermined by the 911 recording, in which his voice could be heard in the background asking for medical attention.  *See* Dkt. 7-5 at 189.  Defense counsel's invocation of the recording to impeach Pinilla constitutes an effective use of the evidence that undermines an allegation of prejudicial effect from the late disclosure.

Mullins also argues that the late disclosure prevented him from re-cross examining the detective who had interviewed Pinilla at the hospital and questioning him about another "possible suspect."  Dkt. 7-7 at 82.  But Mullins's guilt did not depend on the identity of the shooter.  Mullins's guilt was predicated on his directing someone else to cause bodily injury to Pinilla with a weapon and did not depend on the identity of the shooter.  Because the late disclosure call did not prejudice Mullins

25

and did not constitute a due process violation under *Brady*, the Appellate Division's

affirmance of the trial court's denial of the mistrial motion was not an unreasonable

application of clearly established federal law.  *See* 28 U.S.C. § 2254(d).

Therefore, this claim does not merit habeas relief.

### 6.    **Prosecutorial Misconduct**

Finally, Mullins argues that he is entitled to habeas relief because of

prosecutorial misconduct during summation, which involved the prosecutor remarking

that (1) Mullins's attorney's description of Smith's 911 call was "insulting," and (2) the

jury had been "beat[en] over the head with [Pinilla's criminal history]."  Dkt. 7-5 at 244,

246.  The Appellate Division held that the claim was unpreserved for appellate review

and that it was, in any event, meritless.  *Mullins I*, 20 N.Y.S.3d at 414.

The Appellate Division's decision that the claim was unpreserved, citing

New York's contemporaneous objection statute, Crim. Proc. Law § 470.05[2], constitutes

an independent and adequate state ground for its decision and cannot be a basis for

habeas review.  *See Downs*, 657 F.3d at 103-04; *Garcia*, 188 F.3d at 81-82; *Cardova v.

LaValley*, 123 F. Supp. 3d 387, 396-97 (E.D.N.Y. 2015); *Scission v. Lempke*, 784 F. Supp. 2d

237, 245-46 (W.D.N.Y. 2011).  *See also Murden*, 497 F.3d at 191 ("Even where the state

court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review

is foreclosed where the state court has also expressly relied on the petitioner's

procedural default.") (citation omitted).

Moreover, the Appellate Division's conclusion that the claim also failed on the merits was reasonable.  To prevail on a claim of prosecutorial misconduct, the defendant must prove "actual prejudice" resulting from the misconduct.  *Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir. 1998).  A prosecutor's arguments during summation may prejudice a defendant if the remarks "so infect [a] trial with unfairness as to make the resulting conviction a denial of due process."  *Jenkins v. Artuz,* 294 F.3d 284, 294 (2d Cir. 2002) (citing *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)).  Comments that do not "manipulate or misstate the evidence, or implicate other specific rights of the accused," are not so prejudicial as to require habeas relief.  *Darden,* 477 U.S. at 181-82.  Similarly, comments that are "short and fleeting, and thus much less likely to have a substantial effect on the jury's verdict," may not result in a reversal of the conviction.  *Tankleff,* 135 F.3d at 253.  To determine if there is prejudicial error, courts evaluate "[1] the severity of the misconduct, [2] the measures adopted to cure the misconduct, and [3] the certainty of conviction absent the misconduct."  *Strouse v. Leonardo,* 928 F.2d 548, 557 (2d Cir. 1991) (citation omitted).

Here, the prosecutor's comments were brief and fleeting and did not infect the trial such that Mullins was deprived of due process.  Neither the description of defense counsel's remarks during summation as "insulting" nor the argument that the jury had been "beaten over the head" with Pinilla's criminal history constitutes a prejudicial error.  Dkt. 7-5 at 244; *see, e.g., Darden,* 477 U.S. at 181 & n.12 (holding that a

27

prosecutor's graphic remarks about a defendant did not deprive the defendant of a fair trial because the prosecutor did not misstate the evidence or implicate other specific rights of the accused).  Moreover, the trial court admonished the prosecutor for her remarks about Pinilla's criminal history.  Dkt. 7-5 at 246.  Though not an instruction to disregard the prosecutor's comments, this remedial measure addressed the misconduct and mitigated any prejudicial effect of the remark.

Even assuming that the claim was not procedurally barred, the Appellate Division's alternative holding that the claim was meritless is owed substantial deference and is not unreasonable.  Thus, this claim provides no basis for habeas relief.

## CONCLUSION

Mullins has failed to show a basis for relief under 28 U.S.C. § 2254.  Accordingly, his habeas petition is denied.  Additionally, I decline to issue a certificate of appealability because Mullins has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.   The Clerk shall also mail copies of this memorandum decision and the judgment to Mullins at his last known address.

SO ORDERED.

Dated:      New York, New York
            March 31, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation

29